AGNEW v. ADAMS.

1. An order refusing a motion for new trial, moved upon the ground that the verdict was against the weight of the evidence, is not appealable.
2. A party cannot establish title through a void judgment even though such judgment is afterwards declared to be valid by a decree of the Court of Common Pleas in a cause where its validity is one of the issues involved, and all proper parties are before the court.
3. Declarations of a judgment creditor made after a sale of land under his judgment, are inadmissible against the purchaser to show that such creditor had waived his right to enforce his judgment.
4. Issues of fact being involved, the trial-judge could not direct a verdict.
5. The judge may properly charge upon any matter involved in the cause.
6. Under the ruling of this court on a former appeal (15 *S. C.*, 36), the Circuit Judge properly charged the jury that the assignment of homestead in this case was valid, notwithstanding irregularities in the return.

AGNEW *v.* ADAMS.

Before HUDSON, J., Richland, October, 1885.

This was an action to recover two hundred acres of land. The plaintiff purchased 902 acres at sheriff's sale as the property of Robert Adams, the ancestor of the present defendants, and obtained possession of 702 acres thereof, but the defendants declined to surrender the remaining 200 acres thereof, alleging that it had been properly assigned as a homestead to Robert Adams, and therefore did not pass at the sheriff's sale. This action was to recover said 200 acres.

Verdict was for defendants. Plaintiff moved for a new trial upon the ground that the verdict was contrary to the weight of the evidence. This was refused, and at the foot of the order of refusal the Circuit Judge wrote as follows:

"After signing this order, I am urged by counsel for the plaintiff to assign my reasons for refusing a new trial. These reasons are: 1. Because this litigation has been long and stubborn, and many trials have been had on Circuit and in the Supreme Court. It is well that there should be an end of litigation, and courts of justice must recognize this fact. A perpetual war with juries will not be waged by the court. 2. All questions of fact have been strictly submitted to the jury in the very terms and language of the Supreme Court (on the question of waiver especially), and whilst I might differ with the jury on the weight of evidence, yet in this case I yield to their finding because there is. evidence to sustain them, both on the question of waiver by McMaster and on the question of location. I do not think this verdict should be disturbed by me, and I refuse the motion for a new trial."

Plaintiff appealed upon exceptions to the rulings and charges of the Circuit Judge as follows:

1. To his honor's overruling the admission in evidence of the record from the Common Pleas of Richland County in the case of D. Crawford & Sons, John Agnew & Son, and John Agnew, jr., plaintiffs, *v.* Robert Adams, Amie A. Weston, James P. Adams, and Jesse E. Dent, sheriff of Richland County, defendants, showing that the *res litigata*, as well as the *res judicata*, the point in issue, as well as the point decided therein, was the validity of the judgment of *Amie A. Weston* v. *Robert Adams*, and

that it was therein decided, ordered, and decreed that the said judgment was valid, the same being done in a proper suit between proper parties, brought for the express purpose of testing its existence and validity, and binding upon Robert Adams and the defendants.

2. To his honor's ruling inadmissible all testimony going to show that Robert Adams and the plaintiff were estopped from averring against the validity of the judgment of Amie A. Weston against Robert Adams.

3. To his honors', after correctly rejecting, on plaintiff's objection, the testimony of William Wallace, recalling, *suo motu*, William Wallace to testify, notwithstanding plaintiff's renewed objection thereto, as to a conversation with F. W. McMaster, and receiving, notwithstanding plaintiff's objection, William Wallace's testimony as to what F. W. McMaster said long after the matter in issue had been tried by the court, which testimony was incompetent.

4. That after defendants had examined F. W. McMaster, their own witness, his honor erred in allowing F. W. McMaster's declarations to be given in evidence by defendants, and in ruling admissible testimony introduced for the purpose of contradicting F. W. McMaster, their own witness.

5. Because his honor erred in refusing plaintiff's request to direct the jury to find a verdict for plaintiff.

6. Because his honor erred in suggesting to the jury the question whether F. W. McMaster had not waived his execution, and thereby induced Adams to improve his homestead, there not only being no proof, but no legitimate attempt at, or legitimate pretence of, proof thereof.

7. That his honor erred in suggesting any question of waiver or location to the jury, the same being entirely unwarranted by the evidence, and there being no evidence for the defendants on either of these points.

8. Because his honor erred in charging the jury that the pretended assignment recorded, which mentioned no specific land whatever, and an unrecorded plat, unattached thereto, was sufficient compliance with the provisions of the homestead law in regard to the assignment of real estate.

10. Because his honor erred, as matter of law, in not granting a new trial.

11. Because his honor erred in instancing this as a case where, if a new trial was granted, a perpetual war with juries would be waged by the court.

12. Because his honor erred in holding that there was evidence to sustain the question of waiver and location.

13. Because his honor, being of opinion that the verdict was against the weight of evidence, should have granted a new trial.

*Messrs. Bachman & Youmans,* for appellants.

*Mr. A. C. Moore,* contra.

February 14, 1887.   The opinion of the court was delivered by

Mr. Chief Justice Simpson.   The plaintiff in this action sought to recover a tract of land in the possession of the defendants, and which he claimed to belong to him in fee.   The verdict was for the defendants.   The plaintiff moved for a new trial on the ground that the verdict was contrary to the weight of the evidence.   This motion was refused in an order of which the following is a copy, to wit: "The jury having found a verdict for the defendants, and a motion for a new trial having been made on the ground that the verdict was contrary to the weight of the evidence, and after hearing Hon. L. F. Youmans, plaintiff's attorney, for the motion, and A. C. Moore, Esq., in opposition: It is ordered, that said motion for a new trial is refused.   November 7, 1885."

One of the grounds of appeal involves the correctness of this order, and it will be considered at once.   It is not necessary to refer to authority for the position that the question of a new trial upon the facts, insufficiency of testimony to support the verdict, &c., is a question entirely for the Circuit Judge, and that no motion of that kind can be reviewed by this court, unless error of law is alleged in the Circuit Judge in the order which he may make on such motion.   There is no error of law alleged here. Nor could there have been, as the motion was based, not on the

ground that the jury was misled in their verdict by some erroneous instruction as to the law involved, but upon an allegation that the weight of the evidence as to the facts involved was against said verdict.  It is hardly necessary to repeat what we have so often said before this, that on a motion for a new trial the facts of a case and the force and effect of testimony to support said alleged facts, belong exclusively to the jury under the constitution, subject to no control except the Circuit Judge, whose judgment is final.  This disposes of exceptions 10, 12, and 13 of appellant's appeal, as they all involve substantially the same ground.

In the progress of the trial the plaintiff offered in evidence a certain record from the Court of Common Pleas in a case of *D. Crawford & Sons, John Agnew & Sons, and John Agnew, jr.,* plaintiffs, v. *Robert Adams, Amie Weston, James P. Adams, and Jesse E. Dent, sheriff of Richland County,* in which a judgment of *Amie Weston* v. *Robert Adams,* obtained before the clerk of the court in 1874, was held by the Circuit Court to be a valid judgment, from which judgment there was no appeal by Adams.  The plaintiff in his action here claimed title to the land in part through this judgment, he having purchased at sheriff's sale, made under a levy of the execution issued on this judgment, and this record was offered to show that neither Adams nor the defendants, his widow and children, could now dispute the validity of said judgment.

The facts in reference to this judgment are as follows : It was obtained before the clerk of the court in February, 1874, "not in term time and in open court," which was after the legislature had passed an act in 1873, declaring that no judgment shall be obtained in the Court of Common Pleas except during term time and in open court, &c.  In the previous case of *Adams & Agnew,* reported in 15 *S. C.,* 42, this court held, that because of its being obtained from the clerk under the facts above, it was utterly void, and this, too, notwithstanding that in the meantime the case of D. Crawford & Sons and others, creditors, had been instituted to set aside said judgment for the defect stated, in which it was held on Circuit, without appeal, to be good—this court saying, quoting from Freeman on Judgments : "That a void judgment

is in legal effect no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." "Consent will not confer it, and it is so wanting in the color of judicial authority that it will not be reversed on appeal"—referring to *Ex parte De Hay,* 3 *S. C.,* 567. This court said further, that the mere omission on the part of Adams to appeal in the case of D. Crawford & Sons, *supra,* "could not breathe vitality into that which never had existence."

In the second appeal, *Agnew* v. *Adams,* 17 *S. C.,* 373, this court held, that inasmuch as in the first appeal (15 *S. C., supra*) the Amie Weston judgment had been declared utterly invalid (as appears in the strong language above quoted), its exclusion as evidence on the trial below was not error, whatever might have been the purpose of its introduction. We have seen no reason to change our opinion as then expressed. This exception assigning error in excluding this record is therefore overruled.

The 2d exception assigns error because his honor "ruled inadmissible all testimony going to show that Robert Adams and the plaintiff (we suppose the defendants are here meant) were estopped from averring against the validity of the judgment of Amie A. Weston against Robert Adams." This is very general, but we suppose the testimony referred to upon this point was the record in the case of D. Crawford & Sons against Robert Adams, Agnew, *et al., supra,* in which the Amie Weston judgment was held to be valid, to which Adams submitted without appeal. We know of no other testimony looking to an estoppel. None is pointed to in the exception, nor in appellant's argument, and the Crawford record has already been disposed of.

The 3d exception complains that his honor allowed William Wallace, a witness for defendants, to testify as to a conversation with F. W. McMaster, had after the matter in issue had been tried by the court, in which McMaster made some remarks, as contended by defendants, tending to show that he had waived his judgment against Robert Adams. And the 4th exception objects to this testimony as giving declarations of McMaster, and as introduced by defendants to contradict McMaster, their own witness. These exceptions will be better understood by a short

statement here in reference to the connection of Mr. McMaster with the controversy.

Robert Adams some years ago had a homestead of 200 acres assigned to him out of a large tract of land upon which he then lived.  At the time of the assignment there were several judgments against him, some of them upon debts antedating the constitution of 1868; among these was a judgment in favor of Col. F. W. McMaster.  Some time afterwards the land of Adams was levied upon and sold, especially under the Amie Weston judgment, at which sale the plaintiff was purchaser.  The homestead was not surrendered by Adams, and the plaintiff brought action to recover it.  The Amie Weston judgment was declared invalid for the reason stated above.  The plaintiff then fell back upon the McMaster judgment, there being an execution from that judgment in the sheriff's office, and the debt therein antedating the constitution, thereby defeating the homestead.  It was adjudged that this judgment would sustain the plaintiff, unless McMaster had waived his rights thereunder (17 *S. C.*, 373), and the important question below was, whether McMaster had waived his rights.  He was introduced as a witness by the defendants, and he testified that he knew of the assignment of homestead, and did not except because all believed at that time that it was valid.  He did not order the sale, nor did he receive any money in 1874 on his debt.  He never countermanded the mandate on his execution.

'After McMaster had thus testified, Col. William Wallace was offered as a witness by the defendants, to state a conversation he had had with Col. McMaster, some time after the second trial, the substance of which was, that he, McMaster, was surprised that his judgment had been brought into the case; that he had nothing to do with it; that he regarded his judgment as nothing, and that he had abandoned all hope of getting anything on it.  This testimony was allowed to come in after it had at first been excluded by the judge.  In reply to this, the plaintiff called McMaster, who testified that he did not remember the conversation spoken of by Col. Wallace, and that he never gave any order to the sheriff not to levy, nor to levy; that he gave no consent to the homestead at all, and never waived any right

under his judgment. Upon this state of facts the appellant excepted in the two exceptions above. His honor reports that the testimony of Col. Wallace was not in contradiction of Col. McMaster, nor introduced for that purpose; but the vital question in the case being whether McMaster had waived his judgment, his declarations and statements on that subject were regarded as competent, provided they did not contradict him (being defendants' witness), or were not introduced for that purpose. He held, however, that they were free from that objection, because they did not contradict anything testified to by McMaster as defendants' witness, the contradiction being to what McMaster said when he was afterwards called by the plaintiff in reply to the testimony of Col. Wallace.

We do not suppose that the declarations of McMaster made to Wallace were brought out to contradict the testimony of McMaster, given when he was upon the stand as a witness for the defendants. But independent of this, by what rule of evidence can they be held competent? The Circuit Judge himself seemed to be in doubt, and at first rejected them, but afterwards, *suo motu*, allowed them to come in. The question before the court was, whether McMaster had waived his judgment. There could be no waiver except by some act of McMaster, accomplishing such waiver; and this was really the question before the court—had such act been done. McMaster was present in court and a witness. He certainly knew whether he had performed such act, and his testimony upon this matter would have been the highest, and no doubt had he been a party to the cause, seeking to enforce his judgment, any admission or declaration of his to the contrary would have been competent against him, as a declaration or admission against his interest. But here are casual statements made by him, long after the plaintiff had purchased the land, under an execution issued upon his judgment made to an outside party, brought out, not against him, but against a purchaser at sheriff's sale, without notice. While, as we have said, they would have been competent against McMaster himself, we do not think that the plaintiff was in such privity with him as to render such declarations competent against said plaintiff, especially when

McMaster was a witness in the cause, and entirely competent to testify directly on the question of fact involved.

As to the 5th exception. This was not a case in which the Circuit Judge could have legally directed a verdict. There were issues of fact, strongly contested, and it was the province of the jury to decide the facts.

The suggestions made to the jury, complained of in exceptions 6 and 7, appear to have been pertinent, and do not involve legal error. The 11th and 12th refer to the reasons given by his honor for refusing the new trial. That matter has already been disposed of.

As to the assignment of the homestead. It appears that the judge charged in accordance with the decision of this court in the former appeal.

This is the third time that this case has been before this court. This prolonged litigation is to be regretted. We have, however, no alternative but to decide such questions of law as may be brought properly before us.

It is the judgment of this court, that the judgment below be reversed, on the ground of the incompetency of the declarations and statement of Col. McMaster, as testified to by Col. William Wallace, and that the case be remanded for a new trial.

MR. JUSTICE McIVER concurred.

MR. JUSTICE McGOWAN. I concur in the result of the judgment in this case. Col. McMaster was a competent witness and could speak for himself. I fear, however, that the general expression, "there could be no waiver except by some act of McMaster," may be misleading. In one sense it is strictly true, but in another it may not be. A person is said to waive a benefit when he renounces or disclaims it, and that may be express or implied, There may be a waiver without any positive act beyond acquiescence in the acts of others. McMaster's judgment was one of those under which the homestead had been assigned. After that, it was put aside as *prima facie* exhausted. McMaster did not except to the assignment. He did not order the levy or sale. He did nothing but acquiesce in the proceeding. Under these circumstances, would it not be allowable to inquire whether

such acquiescence might not amount to an implied waiver of his right to sell the homestead, as against a stranger, seeking to legalize a void purchase of the homestead, by vitalizing and appropriating the dormant energies of his judgment without his consent or concurrence?

New trial granted.